# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

### ***

|  |  |
|---|---|
| YWS ARCHITECTS, LLC,<br><br>                    Plaintiff,<br><br>vs.<br>ALON LAS VEGAS RESORT, LLC, *et al.*,<br><br>                    Defendants. | 2:17-cv-01417-RFB-VCF<br>**REPORT AND RECOMMENDATION**<br><br>MOTION TO EXPUNGE MECHANIC'S LIEN [ECF NO. 31] |

Before the Court is Defendants/Counterclaimants Alon Las Vegas Resort, LLC and Alon Leisure Management, LLC's (collectively "Alon") Motion to Expunge YWS Architects, LLC's ("YWS") Mechanic's Lien. (ECF No. 31). For the reasons discussed below, Alon's motion should be denied.

## FACTUAL BACKGROUND

Alon owned certain property on Las Vegas Boulevard that it intended to use for its Alon Resort Project. (ECF No. 60 at 2). On May 5, 2015, Alon and YWS entered into a Letter of Intent ("LOI") for the Project. (*Id.* at 3). The LOI, noting that "[t]he master plan for ALON Las Vegas continues to evolve," states YWS will serve as the architect of record on the project and will perform various design services. (Ex. 12 at 2-4).[1] The LOI includes a dispute resolution clause stating:

> In the event any dispute pertaining to this LOI arises, the parties agree to first try in good faith to settle the dispute by mediation pursuant to the Construction Industry Mediation Procedures of the American Arbitration Association. Notwithstanding Sections M-9 and M-12 of the Construction Industry Mediation Procedures, neither party's failure to attend any

---

[1] Exhibit numbers refer to exhibits introduced at the January 12, 2018 hearing before Magistrate Judge Ferenbach.

> mediation conference or exercise their best efforts to prepare and engage in mediation is actionable by the other party as a claim of failure to perform or act in good faith, and either party may termination mediation at any time by giving notice…

(*Id.* at 10).  The LOI was not intended to be the final agreement between parties—Alon and YWS intended to execute a Definite Agreement at a later date.  (*Id.* at 9).  However, the parties did not enter into a Definitive Agreement.

YWS worked on designing the project for more than a year.  (ECF No. 36 at 5, ECF No. 60 at 3).  YWS was responsible for designing model rooms under the LOI.  (Ex. 12 at 3, ECF No. 68 at 161).  In April and May of 2016, Penta Building Group ("Penta") modified an already-existing structure on the Alon property (the "ADC") to hold model rooms.  (ECF No. 64-1 at 3-4, ECF No. 80 at 3-4).  Penta performed maintenance work on the ADC on June 13 and 14, 2016.  (ECF No. 64-1 at 4).  Penta appears to have been on site until August 2016 performing clean-up functions.  (ECF No. 80 at 4).  In addition to the work on the ADC, fencing advertising the future resort was put up around the property.  (ECF No. 60 at 4).

On August 24, 2016, Alon sent a letter to YWS terminating the LOI and indefinitely suspending all design activities related to the project. (Ex. 48).  On September 19, 2016, YWS recorded a lien "for professional services furnished or to be furnished for the improvement of the property."  (Ex. 1 at 2-3).  On October 6, 2016, Alon sent a letter to YWS discussing the lien.  Alon asserts YWS' "demand for mediation was not realistic and does not comport with the good faith requirement of their contractual obligation to mediate this dispute."  (Ex. 4 at 1).  Alon argued the lien was "frivolous and made without reasonable cause."  (*Id.* at 2).  Alon stated:

> If this matter is to be resolved without litigation…[YWS] will need to begin to act reasonably.  We therefore again acknowledge that Alon is willing to attend mediation in good faith….  Alon's participation, however, is predicated on your client releasing its premature mechanics lien claim which we expect to be performed no later than the close of business on Friday, October 7, 2016.

1    (*Id.* at 3).

2    On October 7, 2016, YWS recorded a Release of Mechanic's Lien. (Ex. 2). The release states

3    that YWS' lien "[i]s hereby fully released." (*Id.* at 1). The parties attended mediation on November 17,

4    2016, but they did not resolve the case. (ECF No. 60 at 4). On November 21, 2016, YWS rerecorded its

5    mechanic's lien relating to work done on or before August 24, 2016. (Ex. 3).

6                            **PROCEDURAL BACKGROUND**

7    On October 12, 2017, Alon filed a motion to expunge YWS' lien. (ECF No. 31). Alon argued

8    that YWS' "lien rights never attached" because no visible construction work occurred on the property,

9    and YWS could not rerecord its lien after fully releasing it. (*Id.* at 3). On October 26, 2017, YWS filed

10   an opposition. (ECF No. 36). YWS argued the visible construction requirement applies to priority

11   disputes, not to the attachment of a lien. (*Id.* at 3). YWS also asserted there was visible construction work

12   done on the property and the release of the mechanic's lien did not bar YWS from rerecording. (*Id.* at 4).

13   On November 10, 2017, Alon filed a reply. (ECF No. 47). Alon again asserted "YWS' lien rights simply

14   have not materialized yet" and even if a lien had attached, "YWS fully released its purported right to lien."

15   (*Id.* at 3).

16   On January 12, 2018, the Court held an evidentiary hearing on the motion to expunge YWS' lien.

17   (ECF No. 63). As an initial matter, the parties presented arguments regarding the burden of proof in a

18   motion to expunge a lien. Alon argued that the burden was on YWS to show that the lien was proper.

19   (ECF No. 68 at 20-31). YWS argued the burden was on Alon to show the lien was frivolous and made

20   without reasonable cause. (*Id.* at 32). Alon called Andrew Pascal, Alon's CEO, to testify. (*Id.* at 37-38).

21   Pascal stated that he believes YWS simply recorded the lien to interfere with Alon's ability to obtain

22   financing moving forward. (*Id.* at 40-41, 47). Pascal does not believe that mediation was required under

23   the LOI, and going to mediation was consideration for YWS fully and finally releasing the lien. (*Id.* at

24   39-40). Pascal stated Alon mediated in good faith and discussed Alon's position that YWS overbilled

25

3

Alon for the design work done on the project. (*Id.* at 41, 53-54, 63-70). YWS called Thomas Wucherer, YWS' owner, as a witness. (ECF No. 68 at 71-73). Wucherer testified that YWS recorded its lien to encourage Alon to work with YWS in resolving the dispute and to protect its interest. (*Id.* at 90-93, 95). Wucherer believes that mediation is required in the LOI and doubts that Alon mediated in good faith, considering the sudden change in its asserted damages at the time of mediation. (*Id.* at 96, 110). Wucherer does not believe that YWS' lien release was meant to fully waive YWS' right to record a lien in this matter. (*Id.* at 93-94, 110). The witnesses agreed that Alon's October 6, 2016 demand letter and YWS' release of lien both failed to include any language (1) barring YWS from rerecording the lien or (2) reserving YWS' right to rerecord the lien. (*Id.* at 46-47, 54, 94, 101, 109).

One day before the hearing, Alon filed a motion to supplement its briefs. (ECF No. 64). Alon asserted the ADC "was a completely separate project" from the overall Alon Resort Project, as evidenced by Penta having a separate project number for the ADC. (ECF No. 64-1 at 3, ECF No. 82 at 6). Because the only visible construction was on a separate project and construction ended on June 14, 2016, Alon argued YWS' initial notice of lien was untimely or at least limited to the ADC. (*Id.*). The Court allowed further supplemental briefing on this issue. (ECF No. 64). In opposition, YWS argued that the time to record its lien did not begin until work ceased on the entire "work of improvement," not merely the ADC. (ECF No. 80 at 15-17).

On January 23, 2018, Alon filed a notice of recording of surety bond to release the mechanic's lien on Alon's property. (ECF No. 69). After considering the parties' supplemental briefing on this issue (ECF Nos. 80, 82), the Court finds that the surety bond does not render Alon's motion to expunge the lien moot. NRS 108.2415(1) states that "[t]o obtain the release of a lien for which notice of lien has been recorded against the property, the principal and a surety must execute a surety bond in an amount equal to 1.5 times the lienable amount in the notice of lien." While this provides for a lien being released against the real property it was entered against, the "surety bond shall be deemed to replace the property as security

for the lien." NRS 108.2415(6)(a).  NRS 108.2421(2)(a) provides the method for cases to proceed after a surety bond is recorded.  YWS' lien has now attached to the surety bond.  If Alon prevails on its motion to expunge, the bond could be exonerated or reduced depending on how the motion to expunge is decided.

## DISCUSSION

"The debtor of the lien claimant…who believes the notice of lien is frivolous and was made without reasonable cause, or that the amount of the notice of lien is excessive, may apply…for an order directing the lien claimant to appear before the court to show cause why the relief requested should not be granted." NRS 108.2275(1).  "If, after a hearing on the matter, the court determines that: (a)  The notice of lien is frivolous and was made without reasonable cause, the court shall make an order releasing the lien." NRS 108.2275(6)(a).  If the court determines that "[t]he amount of the notice of lien is excessive, the court may make an order reducing the notice of lien to an amount deemed appropriate."  NRS 108.2275(6)(b).

As an initial matter, the Court determines that YWS was correct that the burden is on Alon to prove that the lien is frivolous and made without reasonable cause.  "[L]ooking to the level of proof required to show the claim is frivolous…the burden is such that the [property owner] must show there is absolutely no basis for a claim. If there is any showing of good faith, the court will not dismiss the lien." *J.D. Constr. v. IBEX Int'l Grp.*, 126 Nev. 366, 373, 240 P.3d 1033, 1038 (2010) (quoting Hearing on S.B. 434 Before the Senate Comm. on Judiciary, 68th Leg. (Nev., May 25, 1995)).

In order to determine whether either or both of YWS' two notices of lien were frivolous and made without reasonable cause, the Court must determine (1) whether YWS ever had an enforceable lien against Alon and (2) whether YWS irrevocably released its lien.

## I.    Did YWS Ever Have an Enforceable Mechanic's Lien?

Alon argues that YWS' "lien rights never attached" because there was no visible construction work done on the property.  (ECF No. 31 at 3).  In the alternative, Alon argues that YWS' lien recordings were

untimely because visible construction on the ADC ended on June 14, 2016, more than 90 days before YWS initially recorded its lien. (ECF No. 64-1 at 3, ECF No. 82 at 6). YWS argues there is no visible construction requirement for a lien to attach against a land owner. (ECF No. 36 at 4). In the alternative, YWS asserts the time to record its lien did not begin until YWS stopped working on the project on August 24, 2016. (ECF No. 80 at 15-17).

### A. Is There is a Visible Construction Requirement?

In the construction context, "work" includes planning and design services. NRS 108.22184. "'Lien claimant' means any person who provides work, material or equipment with a value of $500 or more to be used in or for the construction, alteration or repair of any improvement, property or work of improvement. The term includes, without limitation…any person who performs services as an architect." NRS 108.2214(1). "[A] lien claimant has a lien upon the property, any improvements for which the work, materials and equipment were furnished or to be furnished, and any construction disbursement account" for "the unpaid balance of the price agreed upon for such work, material or equipment" or "the fair market value of such work, material or equipment" if the parties did not agree to a price. NRS 108.222(1).

Alon's argument that there must be visible construction work for a lien to attach rests on statutes dealing with the priority of mechanic's liens. Mechanic's liens have priority over liens which attach or are recorded after "the commencement of construction." NRS 108.225. The commencement of construction is the date on which work performed or materials furnished for the improvement of property "is visible from a reasonable inspection of the site." NRS 108.22112. Some cases have stated that "mechanics' liens do not attach to property until the priority requirements of Nevada's mechanics' lien statute (NRS 108.225) have been met." *In re L. Bruce Nybo, Inc.*, 247 B.R. 294, 297 (D. Nev. 2000).[2]

---

[2] The Court notes that *In re L. Bruce Nybo, Inc.* was decided before the 2003 amendments to NRS Chapter 108 that expanded the definition of "work" to include preconstruction services. *See J.E. Dunn Nw., Inc. v. Corus Const. Venture, LLC*, 127 Nev. 72, 82, 249 P.3d 501, 507 (2011).

However, more recent and authoritative case law establishes that the attachment of mechanic's liens does not rely on the priority statutes. "[U]nder the current statutory scheme, whether work is entitled to a lien pursuant to NRS 108.22184 and whether it is entitled to priority over other encumbrances pursuant to NRS 108.225 are two entirely separate issues." *J.E. Dunn Nw., Inc. v. Corus Const. Venture, LLC*, 127 Nev. 72, 81, 249 P.3d 501, 507 (2011). The Court in *J.E. Dunn* discussed whether, "because preconstruction services have lien rights, those services must also be entitled to a priority position regardless of the express visibility requirement in NRS 108.22112." *Id*. Though the Court concluded visible construction was required for preconstruction services to have priority, the Court also noted "the distinction between lienable work and priority among lien claimants." *Id*. at 82, 249 P.3d at 507-508.

It is clear from the Nevada Revised Statutes that an architect can assert a lien for the preconstruction services performed. The statutes dealing solely with whether the lien exists, as opposed to its priority, contain no requirement for visible construction. Though there is no controlling case on point,[3] persuasive cases have held that mechanic's liens for preconstruction services can be asserted against a landowner who contracted for the work without the need for visible construction. *See Magnum Opes Const. v. Sanpete Steel Corp.*, No. 60016, 2013 WL 7158997, at *4 (Nev. Nov. 1, 2013) (holding a lien can be perfected without any visible construction work); *Zions First Nat. Bank v. Carlson*, 23 Utah 2d 395, 398, 464 P.2d 387, 389 (1970) (stating a priority problem should not lead the Court to "reconstruct the specific language of [the statute governing attachment], so as to deprive an architect, who has rendered services concerning a specific res, of his lien").

The Court concludes that there is no visible construction requirement for YWS to assert its mechanic's lien in this case. Alon, the landowner of the property at issue, hired YWS to perform

---

[3] Alon cites *Iliescu v. Steppan*, 394 P.3d 930, 935 (Nev. 2017) to argue that "a lien [is] improperly recorded by an architect who provided no preliminary notice when there was no visible construction on the property." (ECF No. 31 at 11). However, *Iliescu* dealt with an architect hired by a "prospective buyer" of the property rather than the landowner, and is therefore inapplicable to this case. 394 P.3d at 935.

architectural services for Alon's project.  YWS performed lienable preconstruction services.  YWS was entitled to assert a lien against Alon in this case.

**B.  Were YWS' Notices of Lien Timely?**

To perfect a lien, a claimant must record the lien notice:

(a)  Within 90 days after the date on which the latest of the following occurs:

(1)  The completion of the work of improvement;

(2)  The last delivery of material or furnishing of equipment by the lien claimant for the work of improvement; or

(3)  The last performance of work by the lien claimant for the work of improvement.

NRS 108.226(1).

Alon argues that work on the ADC ended on June 14, 2016, more than 90 days before YWS initially recorded its lien on September 19, 2016.  (ECF No. 64-1 at 3, ECF No. 82 at 6).  YWS argues the time to record its lien did not begin until YWS stopped working on the project on August 24, 2016, which is less than 90 days before September 19, 2016.  (ECF No. 80 at 15-17).  August 24, 2016 is also less than 90 days before November 21, 2016, the date YWS rerecorded its mechanic's lien.  (Ex. 3).

The Court finds that the 90-day deadline did not begin to run until YWS stopped working on the Alon Resort Project.  While Alon seeks to separate work done on the ADC from the Alon Resort Project as a whole, YWS performed work for the both the ADC and Alon Resort Project under the LOI.[4]  In addition, a "work of improvement" is defined as "the entire structure or scheme of improvement as a whole, including, without limitation, all work, materials and equipment to be used in or for the construction, alteration or repair of the property or any improvement thereon, whether under multiple

---

[4] Alon asserts that "YWS had a separate contract for the Alon Sales Center and was paid in full for its work thereon" (ECF No. 82 at 6), but there is nothing in the record to indicate a separate contract.  The fact that there was a single contract also defeats Alon's argument that the amount of the lien was excessive because it should have been limited to the ADC project only.  (ECF No. 64-1at 6-7).

prime contracts or a single prime contract" with two exceptions that do not appear to apply in this case. NRS 108.22188.  Because YWS stopped working on the Alon Resort Project less than 90 days before September 19, 2016, YWS' first notice of lien was timely, non-frivolous, and made with reasonable cause.

**II.  Did YWS Fully Release its Lien?**

Having found that YWS had a valid lien against Alon when YWS first recorded its lien on September 19, 2016, the Court must consider whether YWS irrevocably released its lien and whether it was frivolous to rerecord the lien.  Alon argues recording a release of lien has the same effect as a voluntary discharge of rights, meaning the lien cannot be rerecorded.  (ECF No. 31 at 16.)  YWS argues that releasing a lien does not prevent rerecording the lien afterwards as long as the lien is rerecorded within the statutory timeframe.  (ECF No. 36 at 19-20).

There is no statute in NRS Chapter 108 discussing a partial or temporary lien release made to facilitate mediation.  NRS 108.2437 provides the form that a release should take when the notice of lien "is fully satisfied or discharged."  Several sections deal with waivers and releases made upon condition of payment.  *See* NRS 108.2433, 108.253, 108.2457.

Though there is no statute directly addressing the situation in this case, based on the overall construction of NRS Chapter 108 and persuasive case law from other jurisdictions, the Court finds that a party can rerecord a lien.  The inclusion of multiple forms of releases in NRS Chapter 108 indicates that not all releases are automatically final and irrevocable.  In addition, NRS Chapter 108 does not have a section similar to NRS 14.017(2) emphasizing "the absolute and complete transferability of real property after the withdrawal or cancellation of a notice of" lis pendens.  Other jurisdictions have held "that a mechanic's lien claimant's execution of a release of its first claim of lien for materials did not extinguish the second lien the claimant thereafter <u>timely recorded</u> with respect to the same materials because the release of the first claim of lien did not conclusively and unequivocally represent that its claim for materials was satisfied." *Solit v. Tokai Bank, Ltd. New York Branch*, 68 Cal. App. 4th 1435, 1444, 81 Cal.

Rptr. 2d 243, 249 (1999) (emphasis added); *see also United Metro Materials, Inc. v. Pena Blanca Properties, L.L.C.*, 197 Ariz. 479, 484, 4 P.3d 1022, 1027 (Ct. App. 2000) ("lien rights are preserved when a party uses appropriate language in the release to convey the message that a partial release is intended").

While a mechanic's lien release is not inherently irrevocable, the Court must determine whether YWS' release was intended to be final in this particular case. At the January 12, 2018 hearing, Alon argued that allowing YWS to rerecord its lien would prejudice Alon because Alon gave consideration for YWS irrevocably releasing its lien by agreeing to go to mediation. (ECF No. 68 at 135-136). YWS argues Alon was already required to participate in mediation. (ECF No. 36 at 22). YWS also argued at the January 12, 2018 hearing that Alon did not mediate in good faith, rendering any potential consideration for YWS releasing its lien ineffective. (ECF No. 68 at 140, 144).

The Court finds that YWS' release is not irrevocable in this case. There was no meeting of the minds between Alon and YWS with regard to the effect of the release. Neither Alon's October 6, 2016 letter nor the release contained language explicitly reserving or waiving YWS' right to rerecord its lien. While the release states YWS' lien "[i]s hereby fully released," (Ex. 2 at 1) it does not contain the "for valuable consideration" or "release, satisfy, and discharge" language found in NRS 108.2437(1) for liens that have been fully satisfied or discharged. The Court is not persuaded by Alon's argument that it would be prejudiced by allowing YWS to rerecord its lien. Though Alon argues it was under no obligation to attend mediation, the LOI required Alon to "first try in good faith to settle the dispute by mediation." (Ex. 12 at 10). On one occasion, Alon reminded YWS of its "good faith requirement of their contractual obligation to mediate this dispute." (Ex. 4 at 1). Merely agreeing to attend mediation is not adequate consideration for YWS to irrevocably waive its lien, and the Court finds that Alon could not have reasonably believed that YWS ever thought otherwise.

Because YWS had the right to rerecord its lien and rerecorded the lien within 90 days of when YWS stopped working on the Alon Resorts Project, rerecording the lien was not frivolous or made without

good cause.  Therefore, the lien should not be expunged.  Should the Court determine that "[t]he notice of lien is not frivolous and was made with reasonable cause…the court shall make an order awarding costs and reasonable attorney's fees to the lien claimant for defending the motion."  NRS 108.2275(6)(c).  If the District Court accepts this Report and Recommendation, it should also award reasonable attorney's fees to YWS for defending against Alon's motion.

ACCORDINGLY, and for good cause shown,

IT IS HEREBY RECOMMENDED that Alon's Motion to Expunge YWS' Mechanic's Lien (ECF No. 31) should be DENIED.

DATED this 21st day of February, 2018.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE